**John F. WROBLEWSKI,
Plaintiff–Appellant,**

**v.**

**CITY OF WASHBURN, Defendant–
Appellee.**

**No. 91–1295.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1991.
Decided June 12, 1992.

Joe Thrasher, Weisel, Thrasher, Doyle & Pelish, Rice Lake, Wis. (argued), for plaintiff-appellant.

Stephen P. Juech (argued), Paul F. Heaton, Frisch Dudek, Dennis M. Grzezinski, Milwaukee, Wis., for defendant-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

John Wroblewski, a former mayor of Washburn, Wisconsin, alleges that the city of Washburn singled him out for arbitrary treatment by adopting a policy that made his employment at a city marina virtually impossible. He contends that the city's action, specifically directed at him, deprived him of liberty without due process and of the equal protection of the laws in violation of the Fourteenth Amendment. The district court dismissed Wroblewski's complaint for failure to state a claim. We affirm.

### I.

We review the grant of a motion to dismiss *de novo*, assuming the truth of all well-pleaded factual allegations and making all possible inferences in favor of the plaintiff. *Prince v. Rescorp Realty*, 940

F.2d 1104, 1106 (7th Cir.1991). With this standard in mind, we read Wroblewski's amended complaint to state the following facts.

Sometime before 1981, the city of Washburn (the City) constructed a marina on Lake Superior which it owned and continues to own. In 1981, a company known as Washburn Marine, Inc. was formed to operate the marina. In January 1982, the company leased the marina property from the City for a 20–year period. By 1983, Washburn Marine was experiencing financial difficulties, due in part to the size of its lease payments to the City. Wroblewski and two others were approached to buy out the interests of the company's existing shareholders, and they did so. At about the same time, and again later in 1983, Washburn Marine and the City agreed to certain restructurings of the lease payments.

At some point Wroblewski assumed the responsibilities of president and managing officer of Washburn Marine. In 1985, the company attempted to renegotiate the lease with the city or to purchase the marina outright. The lease payments were higher than the marina operation could support. Certain city officials in a position to control the actions of the city council and Harbor Commission developed animosities toward Wroblewski and resented his attempts to renegotiate the lease.

By August 1986, certain individuals and corporations were willing to invest in the marina operation through Washburn Marine or another entity if the City would agree to restructure the lease or sell the marina. Also by that date, Washburn Marine had become unable to make its lease payments on the marina property. The City then entered into another agreement with the company, deferring part of the lease payment and promising to negotiate in good faith with Washburn Marine and another corporation regarding restructuring of the lease agreement, including rental payments due under it. The City ostensibly entered into negotiations with a potential purchaser, but it did not honor its commitment to negotiate directly with Washburn Marine on restructuring the lease payments.

The City then began eviction proceedings against Washburn Marine because of the latter's inability to make the lease payments. Washburn Marine was evicted, and the City leased the marina facility to a different corporation on terms far more favorable than those ever offered to Washburn Marine.

The City continued to negotiate with potential buyers or lessees of the marina facility. It adopted the policy that any new marina operator could not employ or subcontract work to Wroblewski or any member of his family unless it paid a substantial financial penalty in the form of the deferred payments owed by Washburn Marine. The City communicated this policy to potential purchasers on several occasions. Were it not for the City's policy, it is reasonably certain that investors would have purchased the facility and employed Wroblewski. A private non-profit yacht club approached the City with plans to take over operation of the marina, but the City refused to negotiate with the club because it knew that the club would employ Wroblewski or members of his family. Wroblewski had no personal liability for the debts owed by Washburn Marine to the City. He was given no explanation for the City's treatment of him and no hearing to respond to the treatment.

The City then commenced a pattern of "baseless" litigation against Wroblewski and the other shareholders of Washburn Marine, accusing Wroblewski of racketeering and other crimes. The City's purpose was to prevent Wroblewski from conducting business within the City and to coerce him to waive his right to bring legal action against the City. The City tried to get Wroblewski to sign a release of his potential federal claims against it in exchange for dismissal of the state court litigation; Wroblewski refused to do so. In the course of the litigation, the City refused to proceed with discovery or submit evidentiary proof of its allegations, and the litigation was ultimately dismissed by the Circuit Court of Bayfield County as a sanction

for the City's violation of scheduling orders.

Afterward, the City's mayor announced in public that its lawsuit had been dismissed because the City did not believe it could collect a judgment from Wroblewski. This statement was false and it brought Wroblewski into public disrepute and ridicule. As a result of the foregoing actions, Wroblewski was required to leave Wisconsin for a period of time to obtain employment.

Wroblewski brought this action against the City under 42 U.S.C. § 1983, alleging that the City had violated his constitutional rights to procedural and substantive due process and his right to equal protection of the laws; that the City's policy constituted an unconstitutional bill of attainder; and that the City had infringed his right to interstate travel. The district court dismissed the action for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). On appeal, Wroblewski presses only his due process and equal protection claims.

## II.

### A. *Procedural Due Process*

The requirements of procedural due process encompassed by the Fourteenth Amendment apply only to a state's deprivation of life, liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). We therefore begin by identifying the underlying interest allegedly deprived by the state actor. Wroblewski argues only that he has been deprived of a liberty interest by the City's actions.[1] His contention is that "the City saw to it that John Wroblewski could not work at [the] marina" in violation of his occupational liberty.

The concept of liberty protected by the due process clause has long included occupational liberty—"the liberty to follow a trade, profession, or other calling." *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138 (7th Cir.1984); *see also Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1343 (7th Cir.1987); Laurence H. Tribe, *American Constitutional Law* § 15–13, at 1373–78 (2d ed. 1988). The cases have consistently drawn a distinction, however, between occupational liberty and the right to a specific job. "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708. It is the liberty to pursue a *calling or occupation,* and not the right to a specific job, that is secured by the Fourteenth Amendment. *Lawson,* 725 F.2d at 1138; *Falk,* 818 F.2d at 1344.

Wroblewski argues that the City's policy prevented potential marina operators from hiring him and thus excluded him from his chosen area of work. Wroblewski's exclusion does initially appear to be more than displacement from "a specific job," such as that considered in *Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412, 417 (7th Cir.1988). As alleged, the City effectively prevented Wroblewski from obtaining *any* potential employment or subcontracting work in connection with the City's marina. Yet the sphere from which Wroblewski was excluded cannot properly be called an "occupation," like the practice of law: *See Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). We have declared that "being a police officer is an occupation; being a police lieutenant is not. Being a psychologist is an occupation; being a member of a hospital's medical staff is not." *Falk,* 818 F.2d at 1344. While it is not clear what Wroblewski's claimed occupation or calling is, it cannot be "operating the Washburn

---

1. In the district court, Wroblewski also argued that the City deprived him of property without due process of law. Wroblewski does not challenge, however, the district court's conclusion that he alleged no legitimate claim of entitlement to any employment of which he was deprived. While his brief on appeal makes passing reference to property interests, it makes no developed argument that Wroblewski was deprived of a property interest, and we conclude that such an argument has been waived. *See Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs,* 957 F.2d 302, 305 (7th Cir.1992).

marina facility": that is much closer to a specific job than an occupation. Considered by itself, the City's exclusionary policy, as alleged in Wroblewski's complaint, does not rise to a deprivation of occupational liberty.

But Wroblewski's claim quickly becomes more complex. He argues that the City's exclusionary policy toward him was accompanied by defamation, and that the City's actions considered together constitute a deprivation of liberty. The Supreme Court held in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that mere defamation by public officials does not deprive the victim of liberty or property. Yet defamation that is incident to the government's refusal to reemploy an individual can implicate a liberty interest. *Perry v. F.B.I.*, 781 F.2d 1294, 1300 (7th Cir.) (en banc), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) (citing *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985) (citing *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707)). In such circumstances a liberty interest is involved if "(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Perry*, 781 F.2d at 1300 (quoting *Munson*, 754 F.2d at 693). Liberty is not infringed when the individual is only "somewhat less attractive to some other employers," as through a label of incompetence or poor management skills, *Munson*, 754 F.2d at 693 (quoting *Roth*, 408 U.S. at 574 n. 13, 92 S.Ct. at 2707–08 n. 13); there must be permanent exclusion

from or protracted interruption of employment. *Id.*

Wroblewski's only specific allegation of defamation is the mayor's comment that the City's suit against Wroblewski had been dismissed because the City did not believe it could collect a judgment from him.[2] The City argues at the outset that the constitutional defamation cases do not apply because there is no government employment involved in this case. It is true that all the cases applying this doctrine appear to have done so in the context of nonappointment to or discharge from government jobs. But it is difficult to see how the situation depicted by Wroblewski's complaint is different. As alleged, the *government* specifically acted to exclude Wroblewski from employment, albeit private employment. Any curtailment of Wroblewski's liberty would appear to be the same as if he had lost a government job.

In any event, Wroblewski's complaint fails to satisfy other requirements needed to state this sort of claim of constitutional defamation. First, the alleged defamatory statements were not made incident to the loss of employment. The mayor's comments involved the reasons that the City dismissed its suit against Wroblewski, and were not coupled with the alleged policy of not employing him at the marina. The Supreme Court has recently reiterated that this requirement that the defamatory statement be "incident to" the adverse employment action is a strict one. *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Koch v. Stanard*, 962 F.2d 605, 607–608 (7th Cir.1992) (Flaum, J., concurring).[3] As in *Siegert*, the

---

**2.** Wroblewski's amended complaint can also be construed as alleging that the City's "relentless, baseless prosecution of civil litigation" is part of the "defamation" incident to its alleged exclusionary policy. But as the City points out, the courts have not recognized a constitutional wrong remedied by section 1983 in the separate tort of malicious prosecution. *Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir.1985). Wroblewski does not respond to the City's point. Wroblewski's complaint might also be broadly read as alleging that the City's policy itself constitutes defamation. To be constitutionally cognizable, however, an official's defamation must

consist of specific stigmatizing statements that are made public. *Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). Wroblewski does not allege any such specific defamatory statements in connection with the City's policy; he alleges only that the policy itself was communicated publicly.

**3.** As Judge Flaum explains in his concurrence in *Koch*, the Supreme Court's *Siegert* decision is fully consistent with the doctrine of government employment defamation established in our cases.

statements alleged here did not accompany the adverse employment decision. Second, the mayor's statements were not morally stigmatizing or otherwise strong enough to bestow serious dishonor on Wroblewski. Finally, Wroblewski has not alleged that he was excluded from his profession on a permanent or protracted basis.

Because Wroblewski has failed to allege facts that support a deprivation of his occupational liberty under the Constitution, his procedural due process claim fails.

### B. *Substantive Due Process*

■ Wroblewski's complaint also alleges that the City's actions constitute an arbitrary infringement of his liberty in violation of the substantive component of the due process clause. We have concluded that the complaint fails to make out a deprivation of an occupational liberty interest afforded protection under the procedural due process guarantee. Wroblewski's substantive due process claim is somewhat broader, emphasizing the general arbitrariness of the City's course of conduct toward him. As with his procedural due process claim, of course, Wroblewski must establish an underlying liberty interest of which he has been deprived in order to prevail under a substantive due process theory.[4] But our conclusion as to Wroblewski's occupational liberty in the procedural due process context is not necessarily dispositive of the scope of his liberty for purposes of substantive due process. This is because substantive due process has been held to protect a broad sphere of "harmless liberties" (as well as fundamental rights), *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990), ranging from idle chitchat, *id.,* to wearing a mustache, *Pence v. Rosenquist,* 573 F.2d 395 (7th Cir.1978).

[T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This "liberty" is not a series of isolated points.... It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints....

*Poe v. Ullman,* 367 U.S. 497, 542–43, 81 S.Ct. 1752, 1776–77, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting), *quoted in Moore v. City of East Cleveland,* 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (plurality opinion). The due process clause has historically been held to forbid arbitrary infringements of certain personal immunities that are "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937), and infringements that "shock the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952). Such infringements have been held to violate due process no matter what procedures are employed; they are thus said to implicate the "substantive" component of the due process clause.

The Supreme Court has insisted upon caution and restraint in courts' application of substantive due process. *See, e.g., Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225–26, 106 S.Ct. 507, 513–14, 88 L.Ed.2d 523 (1985); *Moore,* 431 U.S. at 502, 97 S.Ct. at 1937. The potential for application of judges' own moral and political views is obvious in this context, given the broad and open-ended contours of the "right to substantive due process" (which really means the right to a certain sphere of personal liberty free from government intrusion). Yet the Court's repeated calls for restraint do not signal abandonment, *id.,* and thus the doctrine "resolutely refuses to stay dead," *Gumz v. Morrissette,* 772 F.2d 1395, 1405 (7th Cir.1985) (Easterbrook, J., concurring), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986).

Our basic standard in the present case is whether the government action was arbitrary:

---

**4.** This court has recognized that a substantive due process claim can be based on the deprivation of a property interest as well. *See New Burnham Prairie Homes, Inc. v. Village of Burn-* *ham,* 910 F.2d 1474, 1480–81 (7th Cir.1990). Wroblewski contends only that he has been deprived of liberty.

A restriction on a form of liberty not explicitly codified in the Bill of Rights or singled out by the courts for special protection under such rubrics as "right to privacy" and "fundamental rights" violates the due process clause only if utterly unreasonable—that is what "arbitrary" means in this setting....

*Swank,* 898 F.2d at 1252. If the law at issue has a rational justification, then it passes the test. Moreover, evidence that the identified justification was the actual motivation for the law's enactment is not required. *See, e.g., Kelley v. Johnson,* 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976); *Northside Sanitary Landfill v. City of Indianapolis,* 902 F.2d 521, 522 (7th Cir.1990). Review for nonarbitrariness under the due process clause is, for our purposes, analogous to review for a "rational basis" under the equal protection clause. We conclude in the following section (II.C *infra*) that the City's alleged actions survive the rational basis test under equal protection; essentially for the reasons given there we also conclude that the City's actions meet the nonarbitrariness requirement of the due process clause.

The nuances specific to substantive due process doctrine need detain us only briefly. First, the cases sometimes indicate that a government regulation is more likely to be found arbitrary if it applies to private citizens than if it applies to public employees. *See, e.g., Kelley,* 425 U.S. at 248–49, 96 S.Ct. at 1446–47; *Swank,* 898 F.2d at 1252. This principle would appear to strengthen Wroblewski's substantive due process argument: Wroblewski, at all times a private citizen, was "singled out" by the City for no good reason. But Wroblewski was not singled out by the City in an act of *general regulation.* Instead, the City simply adopted a policy under which Wroblewski could not work on *the City's marina.* Consider a situation in which a city examines two bids for construction on a city building. When the city accepts one

entity's bid over the other, it has "singled out" the loser in a sense—but not arbitrarily. To be sure, the "state" has acted, *Avery v. Midland County,* 390 U.S. 474, 480, 88 S.Ct. 1114, 1118, 20 L.Ed.2d 45 (1968), but it has acted not squarely in its role as regulator of the general health, safety and welfare of its citizens, but in a narrower business context. In that context a government entity has considerable discretion to decide with whom it will deal in maintaining its property, and the principle against singling out private individuals has limited application.

Finally, we cannot say that the City's alleged actions "shock the conscience" or fly in the face of our society's standards of decency. Even assuming that the City acted out of animosity and effectively excluded Wroblewski from working on its marina, the actions simply do not rise to such a level of offensiveness or repugnance.

## C. *Equal Protection*

■■■■ Like his substantive due process claim, Wroblewski's equal protection claim urges that he was singled out as a "class of one" without rational basis.[5] In order to withstand scrutiny under the equal protection clause a law must bear only a rational relation to a legitimate state interest (unless it implicates a fundamental right or classifies on a basis triggering heightened scrutiny). *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (per curiam); *Maguire v. Thompson,* 957 F.2d 374, 376 (7th Cir. 1992). The equal protection clause applies to classifications made by the political branches of government. At the outset we must ask whether Wroblewski's complaint alleges a "classification" at all. Ordinarily we think of a classification as involving the placement of a particular entity into a general class; thus we have held that an equal protection claim requires discrimination *be-*

5. Wroblewski's complaint initially describes the City's policy as effectively excluding not only Wroblewski himself but members of his family from work on the City's marina. However, his complaint and argument on appeal urge only that the singling out of Wroblewski himself constitutes a constitutional violation. He has not attempted to state a cause of action, under equal protection or due process, on the basis of the City's targeting of his entire family.

cause of membership in a class. *New Burnham Prairie Homes*, 910 F.2d at 1481–82; *Smith v. Town of Eaton*, 910 F.2d 1469, 1472 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Wroblewski does not allege that he was treated differently by the City because of his membership in any class. He simply alleges that he, and he alone, was singled out by the City Parents out of animosity and for no good reason. His equal protection claim would fail under the principle stated in *New Burnham Prairie Homes*. Other cases, however, are less strict. In particular, we held in *Falls v. Town of Dyer*, 875 F.2d 146, 148 (7th Cir. 1989), that "a law naming [plaintiff] as a unique class" could not be sustained under the equal protection clause.[6] Under the *Falls* approach, in order to be countenanced by the equal protection clause discrimination does not have to be *on the basis of* membership in a class; rather, the state's act of singling out an individual for differential treatment itself creates the class, and in this different sense the state has made a "classification."

 We need not resolve the tension in these approaches, for Wroblewski's claim suffers from a distinct (though related) defect. The equal protection clause's proscription of differential treatment applies only where individuals are similarly situated. *Eisenstadt v. Baird*, 405 U.S. 438, 446–47, 92 S.Ct. 1029, 1034–35, 31 L.Ed.2d 349 (1972). Wroblewski fails, however, to identify any individual or group situated similarly to himself. Indeed, his complaint reveals the respect in which he is *different* from other parties: he has had extensive prior dealings with the marina, and the company with which he was associated owes the City money. We are not required to ignore facts alleged in the complaint

that undermine the plaintiff's claim. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). Wroblewski alleges that future purchasers of the marina were offered terms "far more favorable" than those offered to Washburn Marine. But he fails to allege that any future purchaser or potential operator of the marina stands on the same footing as Wroblewski with respect to prior dealings with the City.

 For the same reason we must conclude that the City's alleged action passes muster under the rational basis standard. When applying that standard, courts presume the constitutionality of the government's classification, *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516–15, and it will not be set aside if any state of facts reasonably may be conceived to justify it, *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). To overcome the presumption of rationality, then, a plaintiff must establish that "the facts on which the legislature may have relied in shaping the classification 'could not reasonably be conceived to be true by the governmental decisionmaker.'" *Sutker v. Illinois Dental Soc'y*, 808 F.2d 632, 635 (7th Cir.1986) (quoting *Vance*, 440 U.S. at 111, 99 S.Ct. at 950).

A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R.Civ.P. 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to

---

**6.** The court in *Falls* speaks generally of "constitutional rights," so it is not immediately clear whether the decision rests on the equal protection clause, as opposed to due process or the bill of attainder clause. However, the court's citation of *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct.

1064, 30 L.Ed. 220 (1886), and *LeClair v. Saunders*, 627 F.2d 606 (2d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), in the crucial passage indicates that its holding applies equal protection doctrine.

progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

■ While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications. We have upheld dismissals under Rule 12(b)(6) of challenges to such classifications, *see, e.g., Maguire*, 957 F.2d at 378–79, and we do so here. A rational basis for the City's policy toward Wroblewski is not only conceivable and plausible; it is directly supported by the allegations in the complaint. The City's policymakers could rationally conclude that it should no longer do business with someone with whom it had been associated in a losing financial arrangement. The complaint's conclusionary assertion that the policy is "without rational basis" is insufficient to overcome the presumption of rationality coupled with the readily apparent justification for the policy.

Wroblewski places particular emphasis on his allegation that the City acted out of animosity, rather than because of some inadequacy on his part. This allegation does make dismissal under Rule 12(b)(6) a closer question. Even this allegation, however, assumed true as it must be, is insufficient to defeat the City policy's presumed rationality. First, as noted earlier, the City's actions took place in the context of its doing business with respect to its marina, and not as part of a scheme of general regulation. A city has considerable discretion to decide with whom it will deal in maintaining its property, and while it certainly cannot make such a decision on the basis of a prohibited classification, it can refuse to deal with someone it has dealt with before. Second, in this context animosity is not necessarily inconsistent with a rational basis. The fact that animosities developed between the City and Wroblewski is not surprising given additional facts contained in the allegations, particularly their previous association and the fact that Wroblewski's company owed the City money. Finally, even if the City officials' animosity toward Wroblewski was not based on any inadequacy on his part, the City could still rationally decide that it should not deal with him in maintaining its marina. Such a judgment could be based on the fact that the animosity itself is likely to doom any future association to failure. A city presumably could not reject a bid for work on city property on grounds of race or sex or political animus; it could, however, decide that it cannot get along productively with someone, at least when that someone has done work on the city's property before.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.