**Mary WESTPHAL, and Saundra Cunningham, on behalf of themselves and all other similarly situated individuals, Plaintiffs,**

**v.**

**CITY OF CHICAGO, Thomas P. Sadler, individually and as agent of the City of Chicago, and Matt Rodriguez, individually and as agent of the City of Chicago, Defendants.**

No. 97 C 5892.

United States District Court, N.D. Illinois, Eastern Division.

June 11, 1998.

---

Robert M. Salzman, Pfeffer, Becker & Cerveny, Ltd., Chicago, IL, Michael Rothmann, Marc Steven Kreiter & Assoc, Chicago, IL, for plaintiffs.

Nancy L. Van Allen, Patricia M. Carroll–Smit, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Derrick Matthew Kedziora, Corporation Counsel's Office, Chicago, IL, Brian L. Crowe, Law Department, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Mary Westphal and Saundra Cunningham ("plaintiffs"), brought suit

on behalf of themselves and all other similarly situated individuals, against the City of Chicago ("City"), Thomas Sadler, and Matt Rodriguez ("defendants"), alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, intentional infliction of emotional distress, negligent infliction of emotional distress, and indemnification under 745 ILCS 10/9–102. The defendants move to dismiss the latter four claims. For the following reasons, the motion is granted.

### Background

Mary Westphal and Saundra Cunningham are Chicago Police Officers. (Comp.¶¶ 6–7). Thomas Sadler is the Chicago Police Department's Director of Personnel. Matt Rodriguez was the Chicago Police Department's Superintendent of Police at the time this suit was filed. Due to disabilities, Ms. Westphal and Ms. Cunningham are on "limited duty" service at the Chicago Police Department. According to the complaint, "limited duty" officers have been permanently injured and are prohibited from performing a police officer's full duty tasks due to medical or mental restrictions. (Comp.¶ 21). The plaintiffs claim the defendants implemented unlawful employment practices against "limited duty" police officers including: (1) segregating "limited duty" police officers to units without the ability to bid for transfers or other vacancies; (2) moving "limited duty" police officers out of their assigned district without regard to seniority; and (3) denying "limited duty" police officers the ability to be promoted. (Comp.¶ 23).

Ms. Westphal suffers from neck, shoulder, and back injuries. She has been on "limited duty" status since 1989. (Comp.¶ 24). On March 8, 1996, Ms. Westphal's physician suggested she attend physical therapy sessions. These sessions were only available during late morning and early afternoon. (Comp. ¶ 25). Ms. Westphal's physician recommended Ms. Westphal be placed on the mid-

night shift so that she could attend the physical therapy sessions. Ms. Westphal returned to work with restrictions on walking, standing, climbing exertion, and lifting. (Comp. ¶ 26). Ms. Westphal alleges that on March 12, 1996, she was arbitrarily transferred from the midnight to afternoon shift and thus, was unable to attend the physical therapy sessions. (Comp.¶ 27). On March 14, 1996, Ms. Westphal's Unit began requesting volunteers for the midnight shift. Ms. Westphal requested a transfer, but was told no positions were available. (Comp.¶ 29).

In 1992 Ms. Cunningham was diagnosed with Systemic Lupus Erythematosis. Like Ms. Westphal, Ms. Cunningham is restricted from prolonged walking, standing, climbing, and strenuous exertion. (Comp.¶ 31). She also has limited use of her hands. On March 26, 1994, Ms. Cunningham took a written promotion exam titled Chicago Police Department BIS D–2 examination. (Comp. ¶ 32). Ms. Cunningham alleges that on October 28, 1996, Mr. Sadler invited her to attend the "BIS D–2 Selection/Waiver Process" to be conducted on November 7, 1996. (Comp. ¶ 34).[1] On November 6, 1996, however, the Chicago Personnel Department, on behalf of Mr. Sadler, informed Ms. Cunningham she was ineligible to participate in the D–2 Bid process due to her "limited duty" status. (Comp.¶ 35). Ms. Cunningham alleges David Zoufal, Counsel to Superintendent Rodriguez, wrote a letter memorializing her ineligibility based on her "limited duty" status. (Comp.¶ 36).

Ms. Westphal and Ms. Cunningham brought this suit on behalf of themselves and all other individuals similarly situated.

### Intentional and Negligent Infliction of Emotional Distress

 The defendants argue I lack subject matter jurisdiction over the plaintiffs' intentional infliction of emotional distress and negligent infliction of emotional distress claims because exclusive jurisdiction exists with the Illinois Human Rights Commission ("IHRC"). "Under Illinois law, when the

---

1. The complaint does not state what a "BIS D–2 Selection/Waiver Process" is or is meant to ac- complish.

allegations on which a state law tort is based constitute a civil rights violation under the Illinois Human Rights Act (IHRA), the tort is preempted." *Krocka v. Riegler*, 958 F.Supp. 1333, 1346 (N.D.Ill.1997). The defendants argue the plaintiffs emotional distress claims are based solely on the allegations that the defendants discriminated against the plaintiffs based on their disability and thus, the claims are preempted.

The IHRA states that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than set forth in this Act." 775 ILCS 5/8–111(C). Discrimination based on a disability is prohibited by the IHRA. 775 ILCS 5/1–103(I). The Illinois Supreme Court has stated that if a state common law claim is "inextricably linked" to the allegation of discrimination, it is within the purview of the IHRA and must be brought in front of the IHRC. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 639 N.E.2d 1273, 1277, 203 Ill.Dec. 454, 458 (Ill.1994); *accord Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 227 Ill.Dec. 98 (Ill.1997). To ascertain whether a common law claim is "inextricably linked" to the discrimination claim, I must determine whether the plaintiffs have alleged the elements of each common law claim "without reference to the legal duties created by the [IHRA]." *Maksimovic*, 687 N.E.2d at 23, 227 Ill.Dec. at 100. In other words, there must still exist a foundation for the emotional distress claims even if the defendants' conduct was not discriminatory. *Silk v. City of Chicago*, No. 95 C 143, 1997 WL 790598, at *16–17 (N.D.Ill. Dec.17, 1997). The plaintiffs have not presented such a foundation.

Both of plaintiffs' emotional distress claims rely exclusively on the duty not to discriminate alleged in the discrimination claims. The plaintiffs present no additional factual allegations in either claim. The plaintiffs' negligent infliction of emotional distress claim states "the City of Chicago, Sadler and Rodriguez were bound by their *statutory duties* to provide equal employment opportu-

nities to all persons regardless of Plaintiffs' ... physical disabilities" and as a result of the defendants' "failure to fulfill these duties, Plaintiffs ... suffered substantial and enduring emotional distress." (Comp.¶ 69) (emphasis added). Likewise in the intentional infliction of emotional distress claim, the plaintiffs state the defendants' conduct was, in part, extreme and outrageous because the defendants "knew or should have known of their statutory duty to provide equal employment rights to all individuals, regardless of their disabilities" and that the plaintiffs' "injury was substantially certain to occur as a result of [the defendants'] discriminatory conduct." (Comp.¶ 64). Essentially, the plaintiffs claim they suffered emotional distress because the defendants "abused their authority by denying Plaintiffs[ ] ... equal employment opportunities available to full duty officers." (Comp.¶¶ 65, 71).

"[T]he court must look to the essence of the claims in order to determine whether the tort claim at issue is, in reality, a claim of discriminatory acts preemptively covered by the IHRA." *See Silk*, 1997 WL 790598, at *16. The plaintiffs' emotional distress claims allege injury based solely on the discriminatory acts that form the basis of the ADA and Rehabilitation Act claims. If the defendants' alleged actions were not prohibited by the discrimination laws, the plaintiffs would have no independent basis for their emotional distress claims.[2] Thus, the plaintiffs' claims are "inextricably linked" to their discrimination claims and must be dismissed. *See Krocka*, 958 F.Supp. at 1346 (finding plaintiff's intentional infliction of emotional distress claim barred because it was "inextricably linked" to ADA claim and had no independent basis absent the allegations of discrimination).

### Section 1983

The plaintiffs claim their constitutional liberty and property interests were violated because the defendants denied them the right to bid for available jobs, have their seniority rights recognized, and be considered for promotions. (Comp.¶¶ 2, 23). The defendants argue the denial of these occupa-

---

2. Indeed, the plaintiffs appear to concede as much in their brief by stating they suffered emotional distress because the defendants foreclosed

"from them employment opportunities that [arose] within the Police Department...." (Pl. Brief at 4).

 

tional opportunities do not amount to protectable liberty or property interests.

The Fourteenth Amendment protects an individual's life, liberty, and property from state deprivation without due process of law. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, but must exist in sources such as state law, rules, and contracts. *Id.* at 577, 92 S.Ct. 2701. In the property interest context, the Seventh Circuit recently affirmed its holding that "no Illinois law ... protects a Chicago patrol officer from adverse action short of discharge or suspension." *Swick v. City of Chicago,* 11 F.3d 85, 86 (7th Cir.1993) (quoting *Confederation of Police v. City of Chicago,* 547 F.2d 375, 376 (7th Cir.1977)). The plaintiffs have cited no basis for a property interest other than Illinois law. Thus, if their Section 1983 claim is to succeed, it must be based on a protected liberty interest.

"It is the liberty to pursue a *calling or occupation,* and not the right to a specific job, that is secured by the Fourteenth Amendment." *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992) (citation omitted) (emphasis in original). The courts consistently distinguish "between occupational liberty and the right to a specific job." *Id.* As the Supreme Court noted, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. 2701. In relation to promotion and transfer at the Chicago Police Department, the Seventh Circuit found that

> to be a policemen is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation. But a particular rank in the police force is not an occupation, just as the army is not a series of separate occupations, ranging from buck private to general of the armies, and just as the private practice of law is not composed of two occupa-

tions—partner and associate.... [W]hile preventing someone from advancing in his occupation can be a cruel deprivation, it would stretch the idea of liberty of occupation awfully far ... to treat a bar to promotion as a deprivation of that liberty.

*Bigby v. City of Chicago,* 766 F.2d 1053, 1057 (7th Cir.1985).

The plaintiffs claim the City's policies prohibit them from taking advantage of employment opportunities within the Chicago Police Department. The plaintiffs, however, do not claim they are foreclosed from their occupation of being police officers or that the defendants' policies have foreclosed employment opportunities outside of the Chicago Police Department. Instead, the plaintiffs complain they are foreclosed from specific jobs within the Chicago Police Department, a complaint that does not implicate the liberty interests protected by the Fourteenth Amendment. *See Thomas v. Board of Examiners, Chicago Pub. Sch.,* 866 F.2d 225, 227 (7th Cir.1988) (finding denial of promotion did not implicate due process liberty interest); *Altman v. Hurst,* 734 F.2d 1240, 1243 (7th Cir.1984) (finding police officer did not have a liberty interest in a particular job assignment). Accordingly, the plaintiffs' Section 1983 claim is dismissed.[3]

### Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted.

---

**3.** The defendants also move to dismiss the plaintiffs' claim to have the city indemnify Mr. Sadler and Mr. Rodriguez should either be found liable. 745 ILCS 10/9–102. The only claims that remain are plaintiffs' ADA and Rehabilitation Act claims. Mr. Sadler and Mr. Rodriguez are not named in either the ADA or Rehabilitation Act claim. Accordingly, plaintiffs' claim for indemnification is dismissed.