**Richard PATRICK, Petitioner,**

v.

**Rick RAEMISCH, Secretary of WI DOC, Mr. Mark K. Heise, Bureau of Classification, Alfonso Graham, Parole Board Chairperson, Steven Landreman, RCI's Parole Board Member and Dr. Coleman, RCI's Clinical Doctor, Respondents.**

**No. 08–cv–98–bbc.**

United States District Court, W.D. Wisconsin.

April 29, 2008.

Richard Patrick, Sturtevant, WI, pro se.

Corey F. Finkelmeyer, Wisconsin Department of Justice, Madison, WI, for Respondents.

## OPINION and ORDER

BARBARA B. CRABB, District Judge.

In this proposed civil action for injunctive and monetary relief, petitioner Richard Patrick contends that defendants Rick Raemisch, Mark Heise, Alfonso Graham, Steven Landreman and Dr. Coleman violated his Eighth Amendment, equal protection and due process rights by impeding his access to discretionary and mandatory parole and to a sex offender treatment program. Petitioner has requested leave to proceed *in forma pauperis* and has paid the initial partial filing fee he was assessed.

Because petitioner may not challenge his right to release under mandatory parole under 42 U.S.C. § 1983 and because respondents' failure to allow petitioner access to sex offender treatment programs or fair discretionary parole hearings does not violate his rights under the Eighth Amendment or the due process or equal protection clauses of the Fourteenth Amendment, petitioner will be denied leave to proceed *in forma pauperis* in this action.

I draw the following allegations of fact from petitioner's complaint.

## ALLEGATIONS OF FACT

### A. *Parties*

Petitioner Richard Patrick is a prisoner committed to the custody of the Wisconsin Department of Corrections. Petitioner is incarcerated at the Racine Correctional Institution in Sturtevant, Wisconsin, serving what remains of a 14–year prison sentence he received after he was convicted of second degree sexual assault of a minor.

Respondents hold the following positions in the Wisconsin Department of Corrections: respondent Rick Raemisch is the secretary, respondent Mark K. Heise is the director of the Bureau of Classification and defendant Alfonso Graham is the parole board chairperson. Respondent Steve Landreman is a parole board member and respondent Dr. Coleman is a treatment doctor, both at the Racine Correctional Institution.

### B. *Petitioner's Attempts to Receive Treatment and Parole*

#### 1. *Dodge Correctional Institution*

In 1999 and 2000, petitioner was incarcerated at the Dodge Correctional Institution in Waupun, Wisconsin. At that time, he attempted to enter a sex offender treatment program. On approximately April 6, 1999 and April 19, 2000, petitioner attended Parole Review Commission hearings. At both hearings, petitioner asked not to be transferred out of state because he wanted to remain in Wisconsin and participate in the recommended sex offender treatment program. From February 18, 2000 to April 21, 2000, petitioner contacted "the right persons" ten times to get information regarding the sex offender treatment program or to attempt to enter the program.

### 2. *Mason Correctional Facility*

In spite of his requests to remain in Wisconsin, petitioner was transferred to the Mason Correctional Facility in Tennessee sometime before October 24, 2000. Petitioner continued to seek sex offender treatment. On approximately October 24, 2000, and April 17, 2001, petitioner attended Parole Review Commission hearings and asked to be returned to Wisconsin to participate in the recommended treatment so that he could eventually become eligible for parole.

On approximately May 11, 2001, petitioner mailed an appeal of the Parole Review Commission's "Decision Action" to the "right persons" in Wisconsin. In the appeal, petitioner explained that his current facility did not offer the program he needed and asked to be returned to the Wisconsin Department of Corrections to pursue the recommended treatment program.

On approximately October 17, 2001, petitioner attended a Parole Review Commission hearing and was told that all Wisconsin prisoners would be transferred out. Again, petitioner asked to be returned to the Wisconsin Department of Corrections to participate in the recommended treatment program.

### 3. *Whiteville Correctional Facility*

In spite of his repeated requests to return to Wisconsin, petitioner was transferred to the Whiteville Correctional Facility in Tennessee. Petition continued to seek return to Wisconsin. On approximately March 4, 2002 and August 27, 2002, petitioner attended Parole Review Commission hearings and again asked to be returned to Wisconsin to participate in the recommended treatment program.

On approximately October 2, 2002, petitioner appealed the Parole Review Commission's action to the "right" persons in Wisconsin. In addition, petitioner mailed copies of his appeal to the governor of Wisconsin, Secretary of the Wisconsin Department of Corrections and a state senator.

On approximately January 28, 2003, petitioner attended a Parole Review Commission hearing and asked again to return to Wisconsin to participate in the treatment program.

### 4. *Fox Lake Correctional Institution*

Sometime between January 28, 2003 and May 14, 2003, petitioner was finally transferred to the Fox Lake Correctional Institution in Fox Lake, Wisconsin. Petitioner continued his attempts to enter a sex offender treatment program. On approximately May 14, 2003, petitioner contacted Mary Morse to get information about how to enroll in the program. On approximately May 18, 2003, petitioner contacted Linda Nauter to see about participating in a treatment program called "SO–2" (petitioner never defines the term "SO–2," but it appears to be the name of a particular sex offender treatment program).

On approximately September 4, 2003 and March 25, 2004, petitioner attended Parole Review Commission hearings and asked to participate in sex offender therapy so that he could become eligible for parole.

### 5. *Racine Correctional Institution*

At some time before June 8, 2004, petitioner was transferred to the Racine Correctional Institution. From June 8, 2004 until December 20, 2005, petitioner contacted the "right person" at the Racine Correctional Institution seven times to get information about entering the "SO–2" program. Petitioner explained to the person that he was placed in the institution for treatment and was not receiving it.

On January 27, 2005, petitioner wrote to parole chairperson Lenard Wells to com-

plain that respondent Landreman was asking petitioner to waive medical treatment (knee surgery) in order to participate in the SO–2 program.

On approximately April 12, 2005, petitioner attended a Parole Review Commission hearing. As before, he asked to participate in SO–2 or be transferred somewhere where he might be able to enter the program

On approximately May 6, 2005, petitioner appealed the Parole Review Commission's decision to the "right" persons in Wisconsin. By then, petitioner had learned that if he stayed at the Racine Correctional Institution, he may have to wait until he was close to his mandatory release date to be considered for the program. Petitioner mailed copies of his appeal to the governor of Wisconsin and Secretary of the Wisconsin Department of Corrections.

In approximately August 2005, petitioner received a questionnaire from respondent Coleman, the SO–2 treatment doctor. Petitioner answered the questionnaire truthfully and affixed a few questions to the questionnaire about his victim privacy rights before returning it to respondent Coleman. On approximately August 30, 2005, petitioner received a letter from respondent Coleman, saying "I have now completed interviews for our upcoming SO–2 group. Unfortunately, you are no longer under consideration for participation in this group. Your name will remain on the waiting list for future consideration. Good luck to you."

From approximately December 2005 until December 2007, petitioner wrote out parole plans and attended hearings where respondent Landreman was involved, even after petitioner asked that Landreman be investigated and had filed a petition for a writ of certiorari against him for his actions. In the petition for a writ of certiorari, petitioner alleged that parole chairperson Lenard Wells and respondent Landreman had violated petitioner's right to a fair parole hearing. Landreman continued to participate in petitioner's parole review commission hearings and petitioner continued to receive 11–month deferrals. Overall, respondent Landreman gave petitioner three "11–month defers" and one "Mandatory Release defer" and changed petitioner's "adjustment MR date" from February 12, 2008 to December 2008.

On approximately April 25, 2006 and April 3, 2007, petitioner attended or waived Parole Review Commission hearings. The Program Review Inmate Classification Summary for each hearing noted that petitioner had no special placement needs, prior escapes or special bulletin notices, had cleared the end of confinement review board screening and did not meet any 980 criteria.

Some sex offenders have been given an opportunity to return to society without completing their treatment programs, such as former inmates Turner and Olson.

## OPINION

Although petitioner articulates a single federal cause of action for "cruel and unusual punishment," his allegations could be understood to assert violations of his due process and equal protection rights by respondents who refused to allow petitioner entry into a treatment program or grant him parole.

■ First, petitioner appears to argue that respondents improperly "changed" his mandatory release date. To the extent petitioner is arguing that respondents are violating his rights by keeping him in prison instead of on probation, such a claim challenges the legality of his ongoing incarceration and must be brought under the habeas corpus statute, 28 U.S.C. § 2254, not 42 U.S.C. § 1983 as petitioner has

done. *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (claim is not cognizable under § 1983 if favorable decision would challenge validity of custody); *Graham v. Broglin,* 922 F.2d 379, 380–81 (7th Cir.1991) (prisoner seeking "freedom" of parole is "seeking what can fairly be described as a quantum change in the level of custody" and must bring suit under habeas corpus statute).

■ Next, petitioner contends that respondents impeded his chances of receiving discretionary parole by blocking his access to sex offender treatment and by failing to provide him truly fair parole hearings. However, respondents' denial of access to treatment programs or discretionary parole do not entitle him to due process. In *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that liberty interests in the prison context "will be generally limited to freedom from restraint which ... imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Petitioner's inability to access treatment programs or discretionary parole is not an "atypical and significant hardship" in comparison to the ordinary incidents of his life as a prisoner. *Richmond v. Cagle,* 920 F.Supp. 955 (E.D.Wis.1996) (no right to sex offender treatment programs); *Heidelberg v. Illinois Prisoner Review Board,* 163 F.3d 1025, 1026–27 (7th Cir.1998) (no constitutional right to discretionary parole).

■ Moreover, petitioner's complaint fails to state a claim for equal protection. The equal protection clause does not require the government to treat everyone exactly the same regardless of the circumstances. Normally, different treatment is permissible so long as there is a rational basis for it. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see also *May v. Sheahan,* 226 F.3d 876, 882 (7th Cir.2000) ("In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest.") Petitioner does not suggest that respondents are treating him differently for a reason that would require more than a rational basis to survive constitutional scrutiny.

■ Under the rational basis standard, "courts presume the constitutionality of the government's classification and it will not be set aside if any state of facts reasonably may be conceived to justify it." *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir.1992) (citations omitted). To state an equal protection claim governed by rational basis review, petitioner's factual allegations should suggest some basis "sufficient to overcome the presumption of rationality that applies to government classifications." *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 639 (7th Cir.2007) (quoting *Wroblewski,* 965 F.2d at 460). If a rational basis for the government's actions remains "conceivable and plausible" in the face of petitioner's allegations, petitioner's equal protection claim should be dismissed for failure to state a claim. *Id.* Petitioner's allegations do not overcome the presumption of rationality. Even under petitioner's allegations, respondents could conclude that there were good reasons to delay petitioner's entry in sex offender treatment and parole. (From the complaint and the many attachments, it appears that petitioner was not allowed into the program first because he was transferred around to different out-of-state facilities and then because the program was unavailable and then because he refused to forgo surgery and could not guarantee 100% participation in the program; it ap-

pears petitioner was not paroled in part because of the seriousness of his crime and because he had been imprisoned before.) Moreover, although petitioner contends that he was treated differently from other "similarly situated" sex offenders, he simply names two other sex offenders who were paroled. The facts do not allow an inference that these other sex offenders were "similarly situated" to petitioner.

■ Finally, petitioner's lack of access to sex offender treatment or a fair parole hearing is not "cruel and unusual punishment." *Bono v. Saxbe*, 620 F.2d 609, 615 (7th Cir.1980) (citing *French v. Heyne*, 547 F.2d 994, 1002 (7th Cir.1976) (no abstract right to rehabilitation exists and failure to provide rehabilitation programs does not constitute cruel and unusual punishment)); *Smith v. United States Parole Commission*, 814 F.Supp. 246 (D.Conn.1993) (because prisoner has no constitutional right to be released prior to expiration of valid sentence, there is nothing cruel or unusual about requiring him to serve minimum term before receiving parole hearing).

In addition to challenging the decision to deny him parole on the ground that it violates his constitutional right to due process, petitioner challenges the denial as violating several state laws. Because I am dismissing petitioner's federal law claims, I decline to exercise supplemental jurisdiction over his state law claims. Petitioner is free to raise any such claims he might have in state court.

### ORDER

IT IS ORDERED that

1. Petitioner Richard Patrick's request for leave to proceed *in forma pauperis* on his Eighth Amendment, due process and equal protection claims is DENIED and this case is DISMISSED with prejudice for petitioner's failure to state a claim upon which relief may be granted;

2. The unpaid balance of petitioner's filing fee is $340.00; this amount is to be paid in monthly payments according to 28 U.S.C. § 1915(b)(2);

3. A strike will be recorded against petitioner pursuant to § 1915(g); and

4. The clerk of court is directed to close the file.