**ABE'S FREE FLOW, INC., Plaintiff,**

v.

**CITY OF MISHAWAKA, INDIANA, Defendant.**

**No. 3:97–CV–242 RM.**

United States District Court, N.D. Indiana, South Bend Division.

March 11, 1999.

Donald E Wertheimer, South Bend, IN, for plaintiff.

Lynn Elizabeth Arnold, Edward N Kalamaros & Associates, South Bend, IN, John P Gourley, Mishawaka, Peter J Agostino, Hunt Suedhoff Borror and Eilbacher, South Bend, IN, for defendant.

## MEMORANDUM & ORDER

MILLER, District Judge.

This cause is before the court on the motion of defendant City of Mishawaka, and the cross-motion of plaintiff Abe's Free Flow, for summary judgment. Abe's alleges that the City discriminated against it and violated antitrust laws by passing an ordinance dealing with the inspection of new sewer lines. The City maintains that no constitutional violations occurred by its enactment of the sewer ordinance and that it is exempt from the antitrust laws.

### Facts

The parties have stipulated to the following facts: Before a newly constructed sewer system may be connected to the Mishawaka Utilities public sewer system, a permit is required and approval from the City is necessary. New systems containing 8″ or larger sewers also require a video inspection of the system to obtain a permit and approval from the City. Before the City's December 1995 enactment of Sewer Use Ordinance 4077 ("the Ordinance"), property owners who sought to connect new 8″ or larger sewers to the Mishawaka Utilities public sewer system could contract with a qualified private contractor to perform a video inspection of the new sewer system. Abe's and other private companies provided video inspection services for new sewer lines. After the Ordinance's enactment, property owners who want to connect newly constructed 8″ or larger systems to the Mishawaka Utilities system must obtain a video inspection of the new sewer system from the City or its authorized agent.

Section 1002(C) of the Ordinance, as amended on July 15, 1996, specifically provides:

All newly constructed sanitary sewers 8″ or larger shall be video inspected by the City Sewer Maintenance Department or their authorized agent. Fees for video inspection shall be paid to the City Engineering Department at the time of permit application for deposit in the Wastewater Department of Mishawaka Utilities in accordance with the following schedule:

| | |
|---|---|
| 1,000 Linear Foot Minimum | $550.00 |
| 1,000 Linear Foot & Greater | $0.55 per Lineal Foot |

Projects or services performed for Governmental units may be exempt from these fees.

Abe's maintains that the Ordinance violates the Fourteenth Amendment's Due Process Clause, because Abe's is denied its liberty interest to pursue a lawful occupation and its freedom to contract, that the Ordinance amounts to a deprivation of equal protection as guaranteed by the Fourteenth Amendment, that the Ordinance violates federal antitrust laws, and that the Ordinance violates certain provisions of the Indiana Constitution and various Indiana statutes. The City seeks summary judgment as to all of Abe's claims. Abe's has filed its own summary judgment motion in response.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ...there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file ....

In considering whether there are any genuine issues of material fact we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264–265 (7th Cir.1996) (citations omitted).

### Occupational Liberty Interest Under the Due Process Clause

Abe's asserts that the Ordinance has deprived it of its recognized constitutional liberty interest to carry on a lawful occupation: providing video inspections of new sewer systems. Abe's claims that because it no longer can contract with sewer construction contractors to provide video inspections for newly constructed sewers in Mishawaka, it has been deprived of much more than a "specific job." Abe's maintains that it has "a legitimate expectation of the liberty to pursue the lawful occupation of performing video sewer inspections in the City of Mishawaka."

The City argues that passage of the Ordinance in question did not violate the Fourteenth Amendment's Due Process Clause. The City cites *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir.1992), for the proposition that the Fourteenth Amendment secures the right to pursue a

calling or occupation, but not the right to a specific job. The City admits that the Ordinance effectively excludes Abe's from a specific job, but maintains that the Ordinance has not excluded Abe's from pursuing its occupation.

■ The concept of liberty exercised through the Fourteenth Amendment includes the liberty to pursue an occupation or profession. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wroblewski v. City of Washburn,* 965 F.2d 452 (7th Cir.1992). While the "concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling[, t]his liberty must not be confused with the right to a job." *Lawson v. Sheriff of Tippecanoe County, Ind.,* 725 F.2d 1136, 1138 (7th Cir.1984). "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Board of Regents v. Roth,* 408 U.S. at 575, 92 S.Ct. 2701. Thus, state action that merely excludes a person from one particular job does not thereby violate the due process clause. *Bernard v. United Township High School Dist. Number 30,* 5 F.3d 1090, 1092 (7th Cir.1993).

Abe's complaint alleges that it is engaged in the plumbing business, the business of providing video sewer inspection services for sewer construction contractors, and other similar and compatible business activities in Mishawaka and surrounding areas. Abe's does not claim that it can no longer participate in any activities of a plumbing business, nor does it claim that it cannot participate in the business of videotaping sewer lines. Abe's claim specifically relates to videotaping new sewer lines, and that activity is but one job within the occupation of a plumbing business. The Ordinance has not caused a complete deprivation of Abe's occupation.

■ A different analysis governs a substantive due process claim of deprivation of occupational liberty. "A restriction on a form of liberty not explicitly codified in the Bill of Rights or singled out by the courts for special protection under such rubrics as 'right to privacy' and 'fundamental rights' violates the due process clause only if utterly unreasonable—that is what 'arbitrary' means in this setting." *Wroblewski v. Washburn,* 965 F.2d at 458 (*quoting Swank v. Smart,* 898 F.2d 1247, 1252 (7th Cir.1990)) Thus, a law violates the Fourteenth Amendment only if the law's opponent demonstrates that the law is arbitrary and unreasonable and that there is no rational basis for its enactment.

Abe's concedes that "[t]he City has a legitimate purpose in ensuring that newly constructed sewers meet city standards," but contends that the Ordinance "is not rationally related to the City's interest in ensuring that newly constructed sewers meet the standards of the Mishawaka municipal sewer system because private free market providers of video sewer inspections services, including [Abe's], are capable of providing video inspections of new 8″ or larger sewer connections to be connected to the Mishawaka municipal sewer system of a quality sufficient to ensure that newly constructed sewers meet the standards of the Mishawaka municipal sewer system." Abe's concludes that the City's actions in passing the Ordinance arbitrarily and capriciously deprived Abe's of its liberty interest.

The City maintains that enactment of the Ordinance was clearly within reason and was not arbitrary. The City claims that it has an interest in the reliability of inspections of new sewer systems because once a system is connected to the Mishawaka Utilities public system, the City is solely responsible for its maintenance. Any defects in new sewer lines that go undetected could result in significant future expense and liability for the City. The City reports that before the Ordinance, there was a large variation in the quality

of the videotaped inspections received from private companies that performed the inspections. Those variations caused delays in the City's identification of construction deficiencies and its ability to accept new sewer lines in that the City's Engineering Department had to review the tapes and compare them to the record drawings submitted by the contractor that installed the system in order to verify compliance with construction standards. The City says the Ordinance has "served to streamline the system for inspection of sewer systems by making the City or its authorized agent consistently responsible for the video taping and inspection of the systems."

The text of the Ordinance sets forth the following reasons for its enactment:

WHEREAS, the City of Mishawaka, Indiana owns and operates the Mishawaka Utilities Wastewater Department for the purpose of receiving and treating waters discharged into the public sewer systems; and

WHEREAS, it is desirable to regulate the use of the public sewer system by controlling the installation and connection of sewers to the system; and

WHEREAS, it is necessary to regulate the discharge of waters and wastes into the public sewer system and to establish rates and charges therefor....

The summary judgment record contains no evidentiary basis to doubt that those are the true reasons for the City's enactment of the Ordinance.

Abe's offers *Santos v. City of Houston, Tex.*, 852 F.Supp. 601 (S.D.Tex.1994), to further its argument that the Ordinance unconstitutionally deprives it of an occupational liberty interest. The *Santos* case, however, is unlike this case. The *Santos* court found that a Texas ordinance amounted to a deprivation of due process, but that determination was based on a factual finding that the business involved "was a sacrificial lamb in a deal struck between City Council and Houston Electric Company." 852 F.Supp. at 608.

There is no evidence in the present case that the City chose to do its own inspections of new sewer lines as the result of a deal between the City and any private business owner.

The City has articulated several rational reasons as to why it enacted the Ordinance. The Ordinance must bear a rational relation to the public health, safety, or welfare, but this Ordinance falls comfortably within those boundaries: an ordinance that dictates the methods of ensuring that sewer lines are within acceptable city standards is rationally related to the City's interest in the public health, safety, and welfare. The City has shown that the Ordinance was enacted for reasons rationally related to a legitimate governmental interest. Abe's has not shown a deprivation of its liberty interest under the Due Process Clause, and the City's request for summary judgment as to this claim must be granted.

### Freedom to Contract Under the Due Process Clause

 Abe's claims the City has interfered with its due process right to contract. Abe's maintains that the Ordinance arbitrarily and unreasonably restricts its freedom to enter into contracts to inspect newly constructed sewers. Abe's also claims that the Ordinance is not rationally related to the City's legitimate interest in ensuring that newly constructed sewers meet City standards, and so the Ordinance goes beyond the "necessities of the case" in serving the City's legitimate interests.

The City claims that even though the Constitution protects a party's right to contract, that protection does not extend to Abe's in this instance because the City had a rational objective in passing the Ordinance, and the Ordinance was a reasonable means of meeting its goal, so Abe's freedom to contract was not violated.

 The court will address the specific arguments presented by the parties on this issue, and the parties turned to vener-

able case law to support those arguments. Freedom to contract is among the freedoms guaranteed by the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The constitutional prohibition on arbitrary or unreasonable restraint of liberty of contract is not absolute. "Liberty [of contract] implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 392, 57 S.Ct. 578, 81 L.Ed. 703 (1937). "So far as the requirement of due process is concerned, ... a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it." *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940 (1934). *See also Walgreen Co. v. Gross Income Tax Div.,* 225 Ind. 418, 75 N.E.2d 784, 787 (1947) ("Regulation which is reasonable in relation to its subject and is adopted in the interest of the community is due process.").

 To prevail on its claim of an unconstitutional violation of its freedom to contract, Abe's must demonstrate that the City acted arbitrarily and capriciously in enacting the Ordinance. The City, on the other hand, need only show that its enactment of the Ordinance was rationally related to a legitimate City interest; the court then must determine "whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory." *Nebbia v. New York,* 291 U.S. at 536, 54 S.Ct. 505.

The City has shown that the Ordinance's purpose—ensuring the standards of new sewer construction—is rationally related to its legitimate goal of providing a reliable public sewer system to its residents. The Ordinance may limit Abe's freedom to contract for the videotaping of newly constructed sewer lines to be connected to the City's system, but the court finds that the Ordinance is a reasonable exertion of the City's authority in attaining its goal of providing a reliable sewer system. Under the circumstances, enactment of the Ordinance was not arbitrary or discriminatory, and Abe's has not demonstrated otherwise. The City is entitled to summary judgment on this claim.

### Equal Protection Claim

 In support of Abe's claim that the Ordinance has deprived it of its equal protection rights as guaranteed by the Fourteenth Amendment, Abe's contends that the Ordinance has created an "impermissible classification between private providers of video inspection[s], such as Abe's, and other providers which the City may authorize as it agents and allow to perform inspections for contractors." Abe's argues that because the City has presented no legitimate reason why certain private sewer inspection businesses may be permitted to act as agents of the City while others may be prohibited from being agents, there is "no conceivable rational basis" for the classification, and the City has acted arbitrarily and capriciously by granting preferential treatment to other video inspection providers that are similarly situated to Abe's.

The City argues that because no fundamental right or suspect class is involved in this case, equal protection analysis requires only that the Ordinance bear a rational relation to a legitimate governmental interest. The City maintains that it had a legitimate basis for passing the Ordinance, and because it will perform all new sewer inspections itself, there has been no preferential treatment or classification that violates equal protection.

 "If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or

because in practice it results in some inequality." *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 175, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (*quoting Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)) (citations omitted). Abe's burden is heavy: it must show "that no set of facts reasonably could be conceived to establish a rational basis for the classification." *Chicago Bd. of Realtors, Inc. v. City of Chicago,* 819 F.2d 732, 740 (7th Cir.1987).

A governmental entity has wide discretion as to whom the entity will do business with in maintaining its property. *Wroblewski,* 965 F.2d at 458. Since the Ordinance's enactment, the City itself has performed all new sewer inspections for property owners seeking to connect to the Mishawaka Utilities public system, and reports the following reasons for doing so: (1) to ensure uniformity in inspections, (2) to identify construction deficiencies more quickly, (3) to streamline the process for accepting new sewer lines into the public system, and (4) to create a uniform and reliable system that results in decreased expense and liability in connection with the City's acceptance of new sewers that are free of defects. The City has used its discretion and decided that it will only permit video inspections of new sewer lines by the City itself or its "authorized agents." There is no basis upon which to assume that because some private business may be as effective as the City in inspecting new sewer lines that the Ordinance is not rationally related to the City's goals. That the City has not authorized any agents at this time and may or may not do so in the future does not render the Ordinance arbitrary or capricious. "There is nothing irrational or vicious about preferring the known quantity to the unknown." *Indiana State Teachers Assoc. v. Board of School Comm'rs,* 101 F.3d 1179, 1182 (7th Cir.1996).

The City's reasons for enacting the Ordinance are rationally related to its legitimate goals with respect to its public sewer system, so the Ordinance does not violate the Equal Protection Clause. The City is entitled to summary judgment as to Abe's claims of an equal protection violation.

### Antitrust Claim

■■■■■ Abe's claims that the City's Ordinance creates an illegal monopoly in violation of 15 U.S.C. § 2. While federal antitrust laws generally apply to states, states are exempt from antitrust liability when a legislative enactment results in anticompetitive conduct. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the Court extended the state action exemption to municipalities where their anticompetitive activities are authorized by the state "pursuant to state policy to displace competition with regulation or monopoly public service." In *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 46, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court concluded that once a municipality shows that state authorization for its action exists, the state need not actively supervise the municipality's properly delegated function. A state's grant of general authority to local governments to govern local affairs is not sufficient, *Community Communications, Inc. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), but a state need not specifically authorize conduct with anticompetitive effects. *Town of Hallie v. Eau Claire,* 471 U.S. at 42, 105 S.Ct. 1713. "It is sufficient that anticompetitive effects are a foreseeable consequence of engaging in the authorized activity." *LaSalle Nat'l Bank of Chicago v. County of DuPage,* 777 F.2d 377, 381 (7th Cir.1985); *Campbell v. Chicago,* 823 F.2d 1182 (7th Cir.1987) (state legislature need not explicitly authorize anticompetitive conduct so long as anticompetitive effect "would logically result from the authority to regulate").

■■■■ The City argues that Indiana has a clearly articulated policy that allows for extensive municipal regulation of city sew-

er systems, so the Ordinance's anticompetitive effect is easily foreseeable. The City maintains that the state authorized enactment of the Ordinance, so the City is exempt from the Sherman Act. The City sets forth numerous Indiana statutes in support of its claim. The City notes that pursuant to state law, it is given the power to control all aspects of the city's sewer systems, including the power to "lay out, design, order, contract for, and execute the construction, alteration and maintenance of all public drains or sewers," IND. CODE § 36–9–6–10, and the power to "acquire, construct, improve, operate, and maintain sewage works." IND. CODE § 36–9–23–2. The City points out that the legislature has approved the use of a municipal works board to supervise and control the "construction, acquisition, improvement, operation, and maintenance of sewage works," IND. CODE § 36–9–23–3, and has provided that the board "may enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers." IND. CODE § 36–9–23–6. In addition, the statutory scheme requires that "[p]lans and specifications for the sewage works contracted for must be approved by the municipal works board before construction is begun," that upon "completion, final inspection, and approval the sewage works become the property of the municipality," and finally, "after the sewage works are approved and accepted by the works board, all further maintenance and operation of them are the responsibility of the municipality." IND. CODE § 36–9–22–3. Municipalities are given the power to "fix the terms of a contract ... for the installation of sewage works ... within the municipality or within 4 miles outside its corporate boundaries in order to provide service for the area." IND. CODE § 36–9–22–2.

Abe's maintains that while those statutes give the City the power to create a monopoly in the provision of sewage services to the public, there is no clearly expressed policy authorizing a monopoly in the inspection of new sewers not owned by the City and not yet connected to the City's system. Abe's argues that the Indiana legislature did not intend "to exclude competition in this business which, prior to the enactment of the ordinance, was traditionally conducted between sewer construction contractors and private inspections services such as Abe's."

The court agrees with Abe's that no language within the relevant statutes deals specifically with the inspection of new sewers, but the statutes contain sufficient language so as to make anticompetitive effects a foreseeable consequence of a municipality's regulation of its sewer system. The statutes empower the City to acquire sewage works, IND. CODE § 36–9–6–10, and to supervise and control the construction and acquisition of sewage works. IND. CODE § 36–9–23–3. Pursuant to those sections, the City has the power to regulate acquisition of newly constructed sewer lines, and the power to regulate acquisition includes the power to regulate the inspection of that which is to be acquired. By giving municipalities the power to "fix the terms of a contract ... for the installation of sewage works," IND. CODE § 36–9–22–2, the Indiana legislature has stated a "clearly articulated and affirmatively expressed state policy to displace competition with regulation in the area of municipal provision of a sewage system." *Town of Hallie v. Eau Claire,* 471 U.S. at 44, 105 S.Ct. 1713. The City's enactment of the Ordinance conforms to state statute, so the City is exempt from federal antitrust liability under the Sherman Act. Summary judgment for the City is proper as to this claim.

### State Law Claims

Abe's also claims that the City's enactment of the Ordinance violated the Indiana Constitution and various state statutes. The City asks the court to retain supplemental jurisdiction over the state law claims, and grant summary judgment in its favor on those claims. Abe's agrees that the court should retain jurisdiction

over the claims, but maintains that it is entitled to summary judgment in its favor on its state law claims.

In any civil action in which the court has original jurisdiction, 28 U.S.C. § 1367 provides that the court shall have "supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The court may, and generally should, relinquish supplementary jurisdiction over state-law claims, however, when all federal claims are dismissed before trial. 28 U.S.C. § 1367(c)(3); *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994). That course is appropriate here.

Although the deadline for completion of discovery has passed, there appears to be no reason why further discovery would be needed in a state action. Dismissal of the state law claims will delay their resolution somewhat, but it will not require replication of preparation for trial. No compelling reason appears to exist as to why an Indiana court should not resolve a dispute under Indiana law between an Indiana citizen and an Indiana city. Therefore, having granted summary judgment on the federal claims, the court will dismiss the plaintiff's state law claims.

*Conclusion*

Based on the foregoing, the court

(a) DENIES AS MOOT the defendant's motion to strike the affidavit of Vernon Campbell (entry # 27);

(b) GRANTS the defendant's summary judgment motion (entry # 20) with respect to Counts 1, 2, 3, and 4 of the plaintiff's complaint;

(c) DENIES the plaintiff's cross-summary judgment motion (entry # 23) with respect to Counts 1, 2, 3, and 4 of its complaint; and

(c) DISMISSES Counts 5, 6, 7, and 8 of the plaintiff's complaint.

SO ORDERED.