Jerome LOOBY,

v.

**CITY OF HARTFORD and Robert Dobson.**

No. 3:98CV1937 (JBA).

United States District Court, D. Connecticut.

Jan. 5, 2001.

Rosemarie Paine, Jacobs, Grudberg, Belt & Dow P.C., Katrena K. Engstrom, Dawne Westbrook, Norman A. Pattis, Williams & Pattis, New Haven, CT, for Jerome Looby.

Karen Kirsten Buffkin, McEleney & McGrail, Helen Apostolidis, John P. Shea, Jr., Corporation Counsel's Office, Hartford, CT, for City of Hartford and Robert Dobson.

### RULING ON MOTION FOR SUMMARY JUDGMENT [DOC. # 28]

ARTERTON, District Judge.

Jerome Looby, a white Hartford firefighter, has sued the City of Hartford and Fire Chief Robert Dobson, claiming that Chief Dobson discriminated against him by denying him promotional opportunities based on his race and in retaliation for complaining about racial discrimination in promotions. While plaintiff eventually was promoted to captain on September 30, 1998, this suit challenges Dobson's earlier refusal to promote him despite his eligibility certification for promotion on four separate occasions between 1997 and 1998.

Defendants City of Hartford and Chief Dobson have moved for summary judgment claiming that Looby cannot prove a prima facie case of discrimination under Title VII, that punitive damages are not recoverable against the City under 28 U.S.C. § 1983 or Title VII, that Dobson is not personally liable under Title VII, that the plaintiff cannot prove that the City is a proper defendant under § 1983, and that qualified immunity bars plaintiff's § 1983 claims against Dobson.

For the reasons that follow, defendant's Motion is granted in part and denied in part. Summary judgment is granted on: the Title VII claims against Dobson; the Title VII claims against the City for three of the four denials of promotions; the § 1983 claims against the City; and the § 1983 due process claim against Dobson. In addition, the City is entitled to summary judgment on the claims for punitive damages. Summary judgment is denied on: the Title VII race discrimination claim against the City related to the April 12, 1998 promotion; the Title VII retaliation claims against the City; and the § 1983 equal protection claims against Dobson.

### BACKGROUND

Plaintiff was employed by the Hartford Fire Department from 1969 until January 11, 2000, when he retired on disability. He was a Lieutenant from November 15, 1987 until October 18, 1998 when he was

promoted to Fire Captain. Plaintiff was first placed on an classified service "eligible register list" for the fire captain position on April 24, 1997. There were fourteen names on that register list, and plaintiff ranked sixth at that time. Under the City Charter, when a classified service position needs to be filled, a subset of three names is taken from the register list in order of ranking on the register list and certified by the Director of Personnel to the Chief. In the event that more than one position needs to be filled, only two more candidates than necessary are certified to the Chief. The Chief has discretion to chose whom he wants from that list.[1] Looby's name was on each list of candidates that was certified to the Chief for the four challenged promotions but Looby was never chosen.

## DISCUSSION

### A. Title VII

Looby brings two Title VII claims against the defendants: reverse racial discrimination and retaliation.

#### 1. *Claims as to Dobson*

■ Defendant Dobson argues that he cannot be held liable under Title VII because suits against an individual supervisory employee, rather than the employer itself, cannot be brought under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314–17 (2d Cir.1995), *abrogated on other grounds, Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Wisely, plaintiff does not oppose this argument. Dobson is clearly enti-

tled to summary judgment on both the Title VII racial discrimination and retaliation claims.

#### 2. *Claims against the City*

##### a. *Racial discrimination*

The City argues that it is entitled to summary judgment on plaintiff's race discrimination claim because Looby fails to make out a prima facie case under Title VII. Looby responds that because "to the extent that defendants were able, they filled the positions with minorities," he has made out a prima facie case of discrimination. Pl.'s Memo. in Opp., at 7.

Under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a prima facie case of discrimination under Title VII, the plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position of Captain; (3) an adverse employment action and (4) under circumstances giving rise to an inference of discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Norville v. Staten Island Hosp.,* 196 F.3d 89, 95 (2d Cir.1999). Once plaintiff has proved his prima facie case, the burden shifts to the defendant to rebut the inference of discrimination created by producing evidence of a legitimate nondiscriminatory reason for the adverse employment decision. *See St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742.

---

**1.** Plaintiff claims that the rankings and scores of the candidates are included on the certified list the Chief receives, referring to an exhibit entitled "Employment Lists" which indicates that the eligible register lists maintained by the Director of Personnel are to be kept in order of final earned rating plus veteran's credit. *See* Pl.'s Ex. F. This exhibit appears to pertain only to the register lists, and does not

indicate whether the particular subset that gets certified to the Chief is to be kept in order of ranking or whether scores are included in the list that is certified. However, the unrebutted affidavit of Patricia Washington, Director of Personnel, submitted by defendants, states that the ranking of the candidates does not appear on the list she certifies to the Chief. *See* Defs.' Ex. M.

The burden then shifts back to the plaintiff to prove that the reasons given by the defendant are pretextual and that discrimination was the reason for the decision. *See id.* The burden on the plaintiff in proving a prima facie case is not onerous. *See Tarshis v. The Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000). The plaintiff simply must submit evidence demonstrating circumstances that would permit a rational fact-finder to infer a discriminatory motive. *See Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996).

Both parties agree that the plaintiff has satisfied the first three elements of the prima facie case. However, the City claims that Looby's prima facie case fails because he cannot prove that the circumstances surrounding the promotions give rise to an inference of discrimination as white men were promoted on all four occasions. In the context of terminations, the Second Circuit has held that where the position remains open after the termination, a Title VII plaintiff need not prove that a person outside the plaintiff's protected class was hired to replace him in order to make out a prima facie case. *See Meiri v. Dacon*, 759 F.2d 989, 996 (2d Cir.1985). The *Meiri* court emphasized that the "elements of proof in employment discrimination cases were not intended to be 'rigid, mechanized, or ritualistic' ... Rather, they were intended only to promote the general principle that a Title VII plaintiff must carry the initial burden of offering evidence adequate to 'raise an inference of discrimination.'" *Id.* (*quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). More recently, the Second Circuit has stated that "[t]he fourth element of the prima facie case may be satisfied by a showing that the plaintiff's position remained open after he was discharged, or that he was replaced by someone outside his protected class." *Tarshis v. The Riese Org.*, 211 F.3d 30, 36 (2d Cir.2000).

■ Looby complains of four Captain promotions he was denied: July 27, 1997, November 16, 1997, April 12, 1998 and June 7, 1998. With respect to the first, second and fourth promotions, Looby concedes that the panels certified by the Director of Personnel consisted of only three white men, and that, as a result, white men were chosen by Dobson instead of him. *See* Looby dep. at 38–41. Under these circumstances, no racial preference could possibly have been involved with the promotions, and no inference of racial discrimination can be drawn from Dobson's failure to promote Looby on these three occasions. Moreover, although Looby's response to the defendants' statement of undisputed facts indicates that he believes he was discriminated against on all four occasions, Looby clearly stated during his deposition that he does *not* believe that he was racially discriminated against on July 27, 1997, November 16, 1997 or June 7, 1998. *See* Looby dep. at 71–78, 86–87. Given these concessions, as well as the failure of plaintiff to make out a prima facie case of discrimination as to these three promotions, the City is entitled to summary judgment with respect to these three promotions.

However, with respect to the April 12, 1998 promotion, the undisputed facts show that six people were certified by the Director of Personnel: four white, one Hispanic and one black; of those six, four were promoted: two white men, the Hispanic man and the black man. The City does not address whether plaintiff can establish his prima facie case by showing that *any* of the four openings on April 12, 1998 were filled by a minority candidate, but simply asserts that because half of the positions were filled by white candidates

other than the plaintiff, Looby fails to make out a prima facie case.

■ .This argument mischaracterizes the law. In *Connecticut v. Teal*, 457 U.S. 440, 455, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), the Court stated that "Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired." The Court stressed that "Congress never intended to give an employer license to discriminate against *some* employees on the basis of race or sex merely because he favorably treats *other* members of the employees' group." *Id.* (emphasis added). It is undisputed that plaintiff could have been hired for any of the four available captain positions, and it is also undisputed that two of those four slots were filled by non-white candidates. Thus, Looby has met his burden of establishing a prima facie case with respect to the third promotion by showing that two of the promotions on that date were to non-whites.

Under *McDonnell Douglas*, the next step usually would be to consider whether the City has produced a legitimate nondiscriminatory reason to explain the failure to promote Looby on April 12, 1998. In their motion for summary judgment, however, defendants rely entirely on the absence of a prima facie case and do not provide *any* explanation for Dobson's decision not to promote Looby on that date.[2] Although defendants may have evidence of Dobson's legitimate nondiscriminatory reason for not promoting Looby on April 12, 1998, no such proffer was made in support of defendant's motion for summary judgment, and

thus it must be denied as to this promotion.

### b. Retaliation

Looby's complaint also alleges that he was not promoted in retaliation for filing the two complaints about racial discrimination in promotions and because "plaintiff is a vocal critic of defendant Dobson's racial animus against white firefighters." *Id.* at ¶ 11. On August 29, 1997, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities, alleging racial discrimination in hiring. *See* Compl. ¶ 9. He also filed a complaint with the City of Hartford's Equal Employment Unit in August 1997. *See id.*

The City, however, never addresses the retaliation claim in its motion for summary judgment. Resolution of this claim therefore must wait for trial.

### B. Section 1983

Plaintiff alleges that the defendants violated his Fourteenth Amendment rights to equal protection of the laws and due process by denying him the promotion to captain on the four dates at issue here. His equal protection claim appears to be based on both race discrimination and a "class of one" theory. The defendant City has moved for summary judgment on all § 1983 claims on the ground that plaintiff has failed to show that the discriminatory acts he complains of were taken pursuant to an official custom or policy or that Dobson was a final policy-maker such that his actions could be imputed to the City. Dobson claims that he is entitled to qualified immunity for the claims against him. Fi-

---

2. In his complaint, Looby states that "Dobson's stated reasons for not promoting the plaintiff are that the plaintiff does not display an appropriate degree of cooperation, leadership, teamwork and display of loyalty to the Fire Department. These reasons are pretex-

tual." Compl. ¶ 12. Defendants, however, do not make this argument and point to no evidence in the record to show that Looby was not promoted for these or any other reasons.

nally, both defendants claim that plaintiff's due process claims fail as a matter of law.

### 1. *Municipal liability*

■■ Under *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may only be held liable under 42 U.S.C. § 1983 if a plaintiff proves the existence of: " '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.' " *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (*quoting Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983)). Liability is not available under a theory of respondeat superior. Instead, a municipality is liable only where "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Brown v. Board of Cty. Commissioners*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff may prevail by showing that a final policymaker engaged in a policy or practice of racial discrimination in promotions, that a final policymaker knew of and ratified the discrimination by lower level municipal employees or that the practice of racial discrimination in promotions was so widespread as to form a custom and practice of the City, despite the lack of an official policy of discrimination. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018.

■ The City first claims that Looby has failed to show that it had a policy or custom of making discriminatory decisions against whites in promotions. The City points to its City Charter and the City's Personnel Rules and Regulations, which expressly prohibit employment discrimination on the basis of race. *See* Defs.' Exs. D, E, G. Plaintiff does not dispute that the official city policy prohibits racial discrimination. However, he asserts, "despite a written policy to the contrary, defendant Dobson has pursued a practice of favoring minorities in promotional and personnel decisions whenever he could. This is a practice which was condoned and supported by the personnel director and the personnel board. The personnel director and personnel board demonstrated through their actions in the meetings and memoranda that they participated in the practice by routinely making inquiries of how extensions or lapsing of lists would affect minorities and then voting to support the wishes of the Chief." Pl.'s Memo. in Opp. at 10.

Construed in the light most favorable to the plaintiff, Looby's evidence in support of his theory consists of minutes from personnel board meetings from 1994 through 1997, such as the September 17, 1996 minutes indicating that when considering whether to extend eligible register lists, "[t]he Chair asked Patricia Washington how many candidates were on the list and a racial and domicile breakdown for them," *see* Pl.'s Ex. C, and personnel memoranda, such as a May 14, 1996 memorandum from Beatrice Sullivan, Principal Personnel Analyst, to Patricia Washington, Director of Personnel, which identifies the racial make up of the eligible register list, and states that "My personal suggestion to the Chief would be to ... ask for an extension of six months if it is minority representation that he wants." Pl.'s Ex. E. However, plaintiff does not allege that he was discriminated against as a result of any decision about whether or not to extend the Captain's list. His sole complaint here relates to Dobson's alleged racially discriminatory failure to promote him once he was already on the eligible list. None of plaintiff's evidence suggests that the City had any reason to believe that Dobson based his determinations about whom to promote from the certified subset of the eligible lists on race, or that the City or the Director of Person-

nel approved of or supported race-based decision-making in determining who to promote from the certified lists, as opposed to acting to ensure that the eligible lists from which the certified subsets were drawn for promotional eligibility contained minorities.

■ Alternatively, plaintiff argues that the City can be held liable for Dobson's acts because he is a final decision-maker with respect to personnel decisions in the Fire Department. Whether a particular municipal employee is a final policymaker depends on an interpretation of the relevant state law. *See McMillian v. Monroe Cty.*, 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality op.) ("a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it"). The inquiry looks to whether the government official has final decision-making authority with respect to the particular decision that allegedly deprived plaintiff of his constitutional rights, not whether the government official has final decision-making authority for every type of official action he may engage in. *See id.* at 785, 117 S.Ct. 1734.

The City contends that Dobson is not a final policymaker because the City Charter grants the Chief only "the discretionary authority to fill vacant positions from a list of certified candidates." According to the City, this "grant of limited authority to hire, fire and reassign employees, consistent with the Personnel Rules and Regulations of the City of Hartford, is not a grant of final policy making authority in the area of employment." Defs.' Memo in Supp. at 16–17.

Chapter XVI, § 12 of the Charter provides that "no person in the classified service of the city or seeking admission thereto shall be appointed, promoted, removed or in any way favored or discriminated against because of his race, his national origin or his political or religious opinions or affiliations." In addition, Chapter XVI, § 2(e) grants the Director of Personnel the authority to "prepare and recommend to the personnel board rules to carry out the provisions of this chapter." The Personnel Board is granted the authority to adopt or amend rules recommended by the Director. *See* Ch. 16, § 5(b).

However, nowhere in the Charter is the Fire Chief given any power to create policy with respect to employment decisions. The City Charter, Ch. X, § 5, states that:

The Fire Chief shall be in direct command of the department of fire. Subject to the provisions of Chapter XVI [Department of Personnel] he shall appoint and remove all other officers and employees of the department. He shall assign all members of the department to their respective posts, shifts, details and duties. He shall make rules and regulations in conformity with the ordinances of the city concerning the operation of the department and the conduct of all officers and employees thereof... The chief shall have further power to make regulations with the force of law, implementing and giving effect to the laws and ordinances relating to fire prevention and fire safety.

Notably, the chief's powers to appoint or remove are expressly "subject to" the anti-discrimination provisions of Chapter XVI. In contrast, he is given authority to make rules and regulations concerning the operation of the department, the conduct of its employees and giving effect to laws relating to fire prevention and safety.

■ This type of separation of policymaking authority from discretion in mak-

ing particular employment decisions is precisely the situation contemplated by the Supreme Court in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484 n. 12, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986):

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy were set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. *This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.* However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability. (Emphasis added.)

In other words, a grant of discretion is not equivalent to policymaking authority, and plaintiff has failed to show anything more than Dobson's authority to exercise discretion in making hiring and promotion decisions. Given the absence of any evidence that the Director of Personnel or the Personnel Board had delegated their authority to make employment policy to the Chief, the City is entitled to summary judgment on all § 1983 claims.

### 2. *Dobson's liability*

#### a. *Equal protection*

Dobson claims that he is entitled to qualified immunity on plaintiff's § 1983 equal protection claims because he had discretion to choose the candidate he wanted from the list that was certified to him, and, according to defendant, it was therefore objectively reasonable for him to believe that he could choose whoever he wanted for the position.

■ A government official sued in his individual capacity is entitled to qualified immunity "where it was objectively reasonable to believe that [his] acts did not violate clearly established federally protected rights." *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). "The qualified immunity defense may be upheld as a matter of law when the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all reasonable inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant to believe that [he] was acting in a fashion that did not violate such a right." *Id.*

■ Defendant concedes, as he must, that the Fourteenth Amendment right to be free from racial discrimination in employment was clearly established as of 1997. As plaintiff correctly notes, the mere fact that defendant has virtually unfettered discretion in employment decisions does not mean that he can base his employment decisions on race or in retaliation against plaintiff's complaints about alleged race discrimination, or that it would be objectively reasonable for him to believe that he was not violating the law by doing so. Defendant Dobson has not addressed the substance of the equal protection claim but instead rests his claim for summary judgment on the § 1983 equal protection claims on his qualified immunity defense. Defendants provide no evidence, as noted above in the discussion of the

Title VII race discrimination claim, to rebut plaintiff's claim that he was not promoted because of his race on April 12, 1998 or because of his complaints about race discrimination in the Fire Department. Therefore Dobson, having not offered proof of why he made the challenged promotional decisions, has not shown his entitlement to qualified immunity at this stage. The § 1983 equal protection claims against him and his affirmative defense of qualified immunity remain for trial.

### b.  Due process

Plaintiff claims that he was denied liberty and property without due process by defendants' refusal to promote him. In response, defendants argue that, as a matter of law, Looby has neither a liberty or a property right in being promoted to captain.

The requirements of procedural due process encompassed by the Fourteenth Amendment apply to deprivation by the state of life, liberty or property. *See Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There are both procedural and substantive components of due process. The procedural component governs the procedures required before the state may deprive a person of liberty or property, generally some version of notice and a hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539–40, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The substantive component prohibits arbitrary, wrongful government actions, " 'regardless of the procedures used to implement them.' " *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (*quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Therefore, if plaintiff had either a property or liberty right to be promoted to fire captain on any of the dates on which he was not promoted, the state could not deprive him of that right without due process.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Thus, for example, where a public employment contract specifies that a discharge may only be for "just cause," an employee has a property interest in continued employment until there is just cause to dismiss him. *See Arnett v. Kennedy*, 416 U.S. 134, 151–52, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Here, the City regulations provide that the Chief has discretion to chose which candidates get promoted from the subset of eligible candidates that is certified to him by the Director of Personnel. *See* Ch. X, § 5. Plaintiff has pointed to no regulation or Department policy to suggest that he had "more than a unilateral expectation" of promotion on any of the dates at issue. *See Roth*, 408 U.S. at 577–78, 92 S.Ct. 2701. Thus, plaintiff has no cognizable property right to promotion to captain.

Plaintiff's claim of a protected liberty interest fails as well. Although there is a recognized constitutional liberty right to pursue an occupation, the cases "have consistently drawn a distinction, however, between occupational liberty and the right to a specific job. . . . It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir.1992). As the Seventh Circuit has noted, " 'being a police officer is an occupation; being a police lieutenant is not.' "

*Id.* (quoting *Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337, 1343 (7th Cir.1987)).

■ Plaintiff's claim here is not that he was prevented from being a fireman, but rather that the Chief refused to promote him to captain. This is not a constitutionally protected liberty right. *See Roth,* 408 U.S. 564, 575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("[O]n the record before us, all that clearly appears is that the respondent was not rehired for one year at one university. It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.") (*citing Cafeteria Workers v. McElroy,* 367 U.S. at 895–96, 81 S.Ct. 1743, 6 L.Ed.2d 1230).

Defendants Dobson and the City of Hartford therefore are entitled to summary judgment on plaintiff's § 1983 due process claim.

### c. Section 1981

Although nothing in plaintiff's complaint denominates a violation of 42 U.S.C. § 1981 and defendants' motion for summary judgment does not mention § 1981, plaintiff devotes part of his opposition to summary judgment to arguing that defendants are not entitled to summary judgment on his § 1981 claims. Because there is no § 1981 claim at issue in this case, whether defendants would be entitled to summary judgment on such a claim need not be addressed.

### C. Punitive damages against the City

■ The City claims that punitive damages cannot be recovered against it for violations of either Title VII or § 1983. The Supreme Court has clearly held that punitive damages are not available against municipalities under § 1983. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 268, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, 42 U.S.C. § 1981a(b) provides that punitive damages are available in Title VII cases *unless* the defendant is "a government, government agency or political subdivision." The City is therefore entitled to summary judgment dismissing plaintiff's claims for punitive damages against it.

### CONCLUSION

Defendants City of Hartford and Robert Dobson's motion for summary judgment is GRANTED IN PART AND DENIED IN PART as set forth above.

The following scheduling order shall also enter:

The parties' joint trial memorandum is due February 9, 2001.

A pre-trial conference will be held February 20, 2001 at 2:00pm.

Jury selection will take place on March 7, 2001.

IT IS SO ORDERED.